NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
                                    :
TRISTAR PRODUCTS, INC.,             :
                                    :   Civil Action No. 08-6263 (PGS)
            Plaintiff,              :
                                    :
      v.                            :
                                    :   OPINION
SAS GROUP, INC.,                    :
                                    :
            Defendant.              :
_____:

**SHERIDAN, U.S.D.J.**

Defendant, SAS Group, Inc. ("SAS"), moves to dismiss the Complaint of Plaintiff Tristar Products, Inc. ("Tristar") for lack of personal jurisdiction and failure to state a claim upon which relief may be granted. For the reasons that follow, the motions will be denied.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

Plaintiff, Tristar, is a Pennsylvania corporation in the business of developing and selling household products. Tristar's principal place of business is located in Fairfield, New Jersey. In October of 2007, Pitchwell Group Ltd. ("Pitchwell") created a television advertisement entitled "Titan Vegetable Shaver" which was first broadcast on or about November 10, 2007. At some point after the advertisement's creation, Pitchwell assigned its right to the copyright in the work to Tristar, and on December 17, 2008 Tristar applied to the Register of Copyrights for a Certificate of Registration. In June 2008, Tristar created a derivative work entitled "Titan

1

Peeler," first broadcast on or about July 26, 2008, and on December 18, 2008 applied to the Register of Copyrights for a Certificate of Registration for that work. Tristar has since used both of these works to market its product, the Titan Peeler.

Sometime after the production of the two Titan Peeler advertisements, Defendant SAS created a television advertisement for a similar product, the Homesmart Samurai Speed Peeler ("Samurai"), which it began broadcasting in August 2008. SAS is incorporated in the state of New York and its principal place of business is in Tarrytown, New York. The Samurai advertisement is distributed in part by national cable channels that air in New Jersey and through a website which can be accessed in New Jersey.[1] The Samurai is also sold by a retailer called As Seen On TV Guys. The retailer sells the Samurai on its website and in their stores, at least one of which is in New Jersey.

Tristar claims that SAS's Samurai advertisement is "substantially identical" to its own advertisements for the Titan Peeler and alleges that SAS used its works without permission to create a derivative advertisement. On December 22, 2008, Tristar filed a Complaint with this Court alleging that SAS committed copyright infringement. Tristar seeks to have this Court enjoin SAS from further infringing on its copyright and to award actual damages it received from SAS's actions.[2]   SAS moved to dismiss the complaint on February 9, 2009.

---

[1]The website's URL is www.samuraipeeler.com. When accessed, the website plays the Samurai advertisement on a continuous loop and provides visitors with an online order form for purchasing the Samurai.

[2]The complaint originally requested damages in the amount of $150,000 per infringement and attorney's fees pursuant to the Copyright Act of 1976, 17 U.S.C. §§ 101, 504(c) et seq., but Tristar withdrew this request in its Memorandum in Opposition to Motion to Dismiss Complaint.

# DISCUSSION

SAS argues that Tristar's complaint should be dismissed because of a lack of personal jurisdiction under Rule 12(b)(2), and a failure to state a claim upon which relief may be granted under Rule 12(b)(6). SAS alternatively requests that a more definite statement under Rule 12(e) must be pleaded. Each argument will be addressed in turn.

## I. Motion to Dismiss for Lack of Personal Jurisdiction.

SAS argues that this Court lacks personal jurisdiction over it because Tristar has failed to demonstrate that SAS has continuous or systematic contacts with New Jersey, or that it has purposefully directed any activities at New Jersey. For the reasons that follow, this argument fails.

### A. Standard of Review

Pursuant to Fed. R. Civ. P. 12(b)(2), a complaint may be dismissed for lack of personal jurisdiction. "If an issue is raised as to whether a court lacks personal jurisdiction over a defendant, the plaintiff bears the burden of showing that personal jurisdiction exists." *Marten v. Godwin*, 499 F.3d 290, 295-96 (3d Cir. 2007). "To meet this burden, the plaintiff must establish either that the particular cause of action sued upon arose from the defendant's activities within the forum state ('specific jurisdiction') or that the defendant has 'continuous and systematic' contacts with the forum state ('general jurisdiction')." *Provident Nat'l Bank v. CA Fed. Sav. & Loan Assn.*, 819 F.2d 434, 437 (3d Cir. 1987) (citations omitted). Under Fed. R. Civ. P. 4(k), "'a federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state.'" *Id.* at 296 (quoting *Provident Nat'l Bank*, 819 F.2d at 437; Fed. R. Civ. P. 4(k)(1)(A)). Pursuant to the New Jersey long-arm rule,

3

N.J. Court R. 4:4-4(c), personal jurisdiction in New Jersey "extends to the limits of the Fourteenth Amendment Due Process protection." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 145 (3d Cir. 1992). Therefore, this Court is "constrained, under New Jersey's long-arm rule, only by the 'traditional notions of fair play and substantial justice,' inhering in the Due Process Clause of the Constitution." *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Those notions require that a defendant have certain minimum contacts with the forum state based upon the defendant's own purposeful availment "of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Unilateral activity on the part of the plaintiff will not cause the defendant to be subject to personal jurisdiction in that forum. *Id.*

However, physical entry into the forum state is not necessary to maintain personal jurisdiction over a defendant. *Id.* at 476. While a presence in the forum will only serve to enhance a defendant's affiliation therewith and serve to reinforce foreseeability of suit therein, "it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." *Id.* All that is necessary for sufficient minimum contacts to be established in the forum state is for "a commercial actor's efforts [to be] 'purposefully directed' toward residents of another State." *Id.*

   **B.   SAS is subject to personal jurisdiction in this forum**

Here, Tristar confines its argument to the question of specific jurisdiction. The three-pronged test for specific personal jurisdiction requires that: (1) the nonresident defendant must purposefully direct his activities at the forum; (2) the claim must be one which arises out of or

4

relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007);   Here, Tristar has alleged sufficient facts to subject SAS to the personal jurisdiction of this Court..

Tristar argues that it can satisfy the first prong of the *O'Connor* test, which requires that SAS purposefully directed its activities at New Jersey, in three ways: 1) SAS furnished the Samurai advertisement to national cable television channels that transmit to televisions in New Jersey; 2) the Samurai Speed Peeler is sold by New Jersey retailer, As Seen on TV Guys, both on a website and in at least one retail store in New Jersey; 3) SAS has displayed the Samurai advertisement on its website which is accessible to New Jersey residents and which solicits orders for the Samurai Speed Peeler.  Although the operation of a passive informational website does not by itself confer jurisdiction, it is well established that a fully interactive website that is used to conduct regular business deals with customers in a forum state does give rise to jurisdiction over claims that arise from those deals. *See Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 452-54 (3d Cir. 2003); *Gourmet Video, Inc. v. Alpha Blue Archives, Inc.*, 2008 WL 4755350, at *9-10 (D.N.J. Oct. 29, 2008); *Dluhos v. Strasberg*, 2005 WL 1683732, at *6 (D.N.J. Jan. 23 2005).  When determining whether a website should subject its operator to the jurisdiction of courts in a particular state, the Court must consider whether the defendant "directly target[ed] its web site to the state, knowingly interact[ed] with residents of the forum state via its web site, or [has] sufficient other related contacts." *Toys "R" Us, Inc.*, 318 F.3d at 454.  If any of these criteria are met, then the purposeful direction prong of specific jurisdiction is satisfied. *Id.*

Here, SAS purposely directed its activities to New Jersey since SAS's website includes an online order form that can be transmitted directly over the internet. The order form includes a drop down menu where customers select their state from a list which includes New Jersey. The website also includes several solicitations to use the order form, such as the phrase "ORDER NOW" in large font and a continuous loop of the Samurai advertisement. In sum, it is clear that SAS intends this site as a forum for business that is operated in part for the use of New Jersey customers.

SAS disputes same because the website cannot confer personal jurisdiction since Tristar has not claimed to have any personal knowledge of any transactions that have actually occurred between New Jersey residents and SAS via the website. Indeed, in the majority of cases in which a court has found that a website has conferred jurisdiction, part of the reasoning has been that a significant amount of business or communication has occurred between the defendant and residents of the forum state through the site. *See, e.g.*, *Gourmet Video*, 2008 WL 4755350 at *15-16; *Zippo Mfg. Co. v. Zippo DOT Com*, 952 F. Supp. 1119, 1126 (W.D. Pa. 1997). The Third Circuit, however, has suggested that a plaintiff's knowledge of specific deals conducted over a website operated by a defendant is not necessary for a finding of personal jurisdiction. *See Toys "R" Us, Inc.*, 318 F.3d at 454. It is enough that a highly interactive commercial website is "designed or intended" to reach customers in a particular state. *Id.* Here, SAS's website was designed to reach New Jersey customers, and there is contact with New Jersey through the retailer As Seen On TV Guys, the first prong of specific jurisdiction is met.

The second prong of the *O'Connor* test requires that Tristar establish that its claim arises out of or is related to SAS's contacts with New Jersey. As demonstrated above, SAS's contacts

with New Jersey including its posting of the Samurai advertisement on an interactive commercial website and via television. Tristar's claim is that this very advertisement infringes on its copyrighted advertisement. Thus, the claim is directly related to the Defendant's contacts with the state.

Finally, Tristar also satisfies the third prong of the *O'Connor* test, which requires that an assertion of personal jurisdiction must comport with traditional notions of fair play and substantial justice. This provides the court with an opportunity to consider any other factors that might make an exercise of jurisdiction substantially unfair to the defendant. When, however, a plaintiff has shown that a non-resident defendant has purposefully directed its activities to the forum, a heavy burden is on the defendant to present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477. Here, SAS has not brought any considerations of this type.

SAS's motion to dismiss the case for lack of personal jurisdiction is therefore denied.

## II.     Motion to Dismiss for Failure to State a Claim

As a preliminary matter, it should be noted that in support of its motions, SAS has submitted a Declaration from the President of SAS, Scott Sobo ("Sobo Declaration"). The Sobo Declaration consists of ten numbered paragraphs, the first six of which pertain generally to the jurisdictional arguments raised by SAS, and the last four are facts which pertain generally to the SAS's claim that Tristar failed to state a claim. "To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993), *cert. denied*, 510 U.S. 1042 (1994). Under Fed. R. Civ. P. 12(d), a court

7

may convert a motion made pursuant to Fed. R. Civ. P. 12(b)(6) to a motion for summary judgment if extrinsic documents are appended thereto. However, this is unnecessary where the court is asked to "consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *White Consol. Indus.*, 998 F.2d at 1196. Here, the Sobo Declaration and attached exhibits– namely, the commercials referenced in plaintiff's complaint– form the basis for plaintiff's claims. As a result, this court will consider the Sobo Declaration and its attachments without converting defendant's motion to dismiss to a motion for summary judgment.

### A. Standard of Review

On a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the Court is required to accept as true all allegations in the Complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. *See, e.g.*, *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 (3d Cir. 1994). A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. *Iqbal*, 129 S. Ct. at 1950. The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. *Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000), cert. denied, *Forbes v. Semerenko*, 531 U.S. 1149, 121 S.Ct. 1091 (2001). While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *Iqbal*, 129 S. Ct. at 1949; *Morse v. Lower Merion School District*, 132

F.3d 902, 906 (3d Cir.1997). "The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" *Kost v. Kozakewicz*, 1 F.3d 176, 183 (3d Cir.1993) (quoting 5A Wright & Miller, Fed. Practice & Procedure: Civil 2d § 1357 at 340). The Supreme Court has recently held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact), . . . ." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted); *see also Iqbal,* 129 S. Ct. at 1949-50.

### B. Dismissal of Tristar's Claim Pursuant to 12(b)(6) Is Denied

To sufficiently allege a copyright infringement claim, a plaintiff must allege both that it has a valid copyright in the work and that the defendant copied elements of the work that are original. *Whelan Assocs., Inc. v. Jaslow Dental Lab., Inc.*, 797 F.2d 1222, 1231 (3d Cir. 1986).

It is a general principle of copyright law[3] that substantial similarity between two works cannot be demonstrated solely by pointing out random similarities across the works. See, e.g., *Williams v. Crichton*, 84 F.3d 581, 589 (2d Cir. 1996); *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1044 (9th Cir. 1994); *Pino v. Viacom, Inc.*, 2008 WL 704386 (D.N.J.

---

[3] SAS argued Tristar has no standing to sue because it did not show ownership of the commercial. Tristar submitted Certificates of Registration which are sufficient to show ownership. *Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F.2d 277, 290-91 (3d Cr. 1991). Because ownership of the copyright has been established, Tristar has standing to sue.

Mar. 4, 2008).  This is especially true when the copyright infringement claim is based on an original arrangement of unprotected materials, as the entire basis for the claim is that both works are identically sequenced.  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349-51 (1991).

      Here, SAS argues that the Titan Peeler and Titan Vegetable Shaver advertisements are entirely composed of unoriginal material not protected by the Copyright Act.  Specifically, SAS claims that all of the images and phrases used in the advertisements belong in one of three categories that fall outside of copyright protection: 1) they demonstrate the functional elements of all vegetable peelers; 2) they constitute *scenes a faire* which are indispensable to any promotion of a kitchen utensil; and 3) they are examples of material and themes common to all infomercials.  Because of this, SAS argues that the list of "significant similarities" between the two advertisements that Tristar provided in the Complaint is insufficient to support a claim for copyright infringement.

      Tristar's response to this argument is to concede that while many of the specific images and phrases it lists in the Complaint are unoriginal if viewed in isolation, the exact sequence of ideas, images, and themes within the advertisement is original, and it is that which SAS copied.  In ¶ 14 of the Complaint, Tristar alleges that SAS used copies of the Titan Vegetable Shaver and Titan Peeler advertisements to create a "substantially identical" television commercial.  In ¶ 15, Tristar provides a side-by-side comparison of "significant similarities" between its advertisements and the Samurai advertisement.  The list consists of excerpts from the text and two still images of each advertisement.  While the list does not state outright that the two are "identically sequenced," a review of the commercials, does indicate nearly identical sequencing.

In point of fact, the court's review of the commercials revealed following sequence of claims made:

| Titan Peeler | Order of Claim | Samurai Peeler | Order of Claim |
|---|---|---|---|
| The secret is Titan's dual-action blades that peel and slice on an upward motion as well as downwards– making it twice as fast as ordinary peelers that only work in one direction. | 1 | The Samurai Speed Peeler is the amazing dual-action peeler and slicer that works down one way and up the other so you do twice the work in half the time. | 1 |
| Peel onions quickly and easily with no tears. | 3 | Peeling onions so fast, you won't have time to cry. | 3 |
| Glide over soft and hard cheese and get a perfect slice every time. | 4 | Slice hard or soft cheese in a breeze. | 4 |
| The Titan's twin micro blades are tough enough to cut through wood, yet sharp enough to peel the delicate skin of a tomato. | 5 | It's tough enough to cut through this two-by-four, yet it will steel peel the skin from this beautiful peach. | 6 |
| Watch as it creates fabulous julienne slices fast and precise every time.  Power through piles of cabbage to make tasty, homemade cole slaw in seconds. | 6 | Prepare a medley of vegetables, a pile of homemade shoestring potatoes and watch as it shreds a mountain of fresh cole slaw in just seconds. | 9 |
| The Titan Peeler is made from 100% stainless steel, so it will never break or dully.  That's why we're offering a lifetime warranty on the blades. | 9 | Made with forever-sharp stainless steel blades | 5 |
| Slice through mounds of vegetables for stir frying in half the time. | 2 | Use it as a slicer to make healthy salads right in the bowl or a delicious stir fry right into the pan. | 8 |
| Slice through onions, cucumbers and carrots, making perfect slices every time. | 8 | Carrots, cucumbers, zucchini and potatoes. | 2 |
| We'll also include this amazing slicing board to turn your Titan Peeler into a super-fast mandolin slicer. | 7 | And here's the best part!  Your Samurai Peeler turns into a mandolin slicer– just snap in the platform and start speed slicing. | 7 |

11

The allegations as pled are sufficient to survive a motion to dismiss, where they must be taken as substantively true. *See Iqbal*, 129 S. Ct. at 1950. Defendant's motion to dismiss is denied.

**Conclusion**

For the foregoing reasons, defendant's motions to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) are denied.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.

September 9, 2009